NOT PRECEDENTIAL                                               (Doc. Nos. 6, 10)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| ERICA J. ATKINSON, Individually and as the Representative of the Estate of Sophia Cowan, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>FOREST RESEARCH INSTITUTE, INC., FOREST LABORATORIES, INC., FOREST PHARMACEUTICALS, INC.,<br><br>Defendants, | Civil Nos. 13-1832, 13-4703 (RBK/AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

　　This matter comes before the Court on Defendants Forest Research Institute, Inc., Forest Laboratories, Inc., and Forest Pharmaceuticals, Inc.'s Motion to Dismiss Plaintiffs' Complaint for failing to timely commence this suit within the applicable statute of limitations. Although the Defendants do not specifically reference a provision of the Federal Rules of Civil Procedure in support of their motion, the Court construes their motion as falling under Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the Court will **DENY** Defendants' motion.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

　　The decedent, Sophia Cowan, was born in the State of Indiana on July 14, 2011, with atrioventricular canal defects. (Compl. ¶ 2.) Several weeks later, on August 7, 2011, Sophia died as a result of these complications. (Id.) Plaintiffs allege that Sophia's cardiac birth defects

and resulting death were due to her mother's, Erica Akinson's, ingestion of "Lexapro and/or Celexa during the course of her pregnancy pursuant to a doctor's prescription (hereinafter, "Mother Plaintiff"). (Id. ¶ 22.) Mother Plaintiff is also a citizen of Indiana. (Id. ¶ 1.)

Defendants Forest Research Institute, Inc., Forest Laboratories, Inc., and Forest Pharmaceuticals, Inc. (collectively referred to in Plaintiffs' Complaint as "Forest"), are alleged to be the pharmaceutical companies "involved in developing, labeling, marketing, monitoring, performing regulatory compliance and reporting, performing and/or participating in clinical trials, performing drug surveillance, researching and testing of pharmaceuticals for distribution, sale, and use by the general public, including the drug Lexapro." (Id. ¶ 17.)

On August 2, 2013, Mother Plaintiff filed suit in this Court individually, and as the representative of Sophia's estate, invoking this Court's jurisdiction under 28 U.S.C. § 1332, and asserting the following claims: (1) strict liability – failure to warn; (2) strict product liability – design defect; (3) negligence; (4) negligent pharmaco-vigilance; (5) negligent design; (6) breach of express warranty; (7) breach of implied warranty; (8) fraud; (9) loss of consortium and pecuniary loss; (10) negligent infliction of emotional distress; (11) punitive damages; (12) wrongful death; and (13) a survival action. It appears that Mother Plaintiff seeks relief on her own behalf for her personal injuries, on behalf of Sophia's estate for Sophia's injuries by way of a survival cause of action, and on behalf of Sophia's heirs by way of a wrongful death cause of action.

On November 4, 2013, Defendants filed the instant Motion to Dismiss. (Doc. No. 6.) After the parties completed briefing, Plaintiffs filed their Unopposed Motion for Leave to File Sur-Reply in Opposition to Defendants' Motion to Dismiss. (Doc. No. 10.) As Plaintiffs'


motion remains unopposed, the Court will **GRANT** that motion and turn to Defendants' Motion to Dismiss.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief may be granted.  With a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A claim may be dismissed as untimely under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  The statutory bar must be "apparent on the face of the complaint" in order to form the basis for a dismissal under Rule 12(b)(6).  Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).  See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

**III.     DISCUSSION**[1]

Defendants argue that Plaintiffs' wrongful death claims are time barred because Indiana law, rather than New Jersey law, governs this action and Plaintiffs failed to comply with Indiana's commencement rules such that the applicable limitations period expired. (Defs.' Br. 2-10.)

Plaintiffs respond that New Jersey law applies to their claims and because they complied with New Jersey's commencement rules their claims are timely. (Pls.' Opp'n Br. 9-14.)

### A.  Choice of Law Analysis

"In a diversity case filed in New Jersey, New Jersey choice of law rules govern." Yocham v. Novartis Pharms. Inc., 736 F. Supp. 2d 875, 880 (D.N.J. 2010). Under New Jersey law, a court must first determine if an actual conflict of law exists, Gray v. Bayer Corp., No. 08-4716, 2011 WL 2975768, at *2 (D.N.J. July 21, 2011), which is done "by examining the substance of the potentially applicable laws to determine whether there is a distinction between them," P.V. ex re T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008) (quoting Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006) (internal quotation marks omitted)). "Once it has been determined that a conflict exists, the court must then determine which state has the 'most significant relationship' to the claim at issue, as analyzed under the Restatement (Second) Conflict of Laws." Gray, 2011 WL 2975768, at *2 (citing Camp Jaycee, 962 A.2d at 460).

Where the conflict of laws analysis results in the application of the substantive law of another jurisdiction, New Jersey also "borrows" the statute of limitations from that jurisdiction. Warriner v. Stanton, 475 F.3d 497, 500 n.2 (3d Cir. 2007) (citing Heavner v. Uniroyal, Inc., 305

---

[1] As an initial matter, Defendants do not challenge the timeliness of Mother Plaintiff's claims for her own injuries and damages. Accordingly, the Court will only inquire into the viability of Plaintiffs' wrongful death and survival causes of action.

A.2d 412, 418 (1973)); see also Clark v. Prudential Ins. Co. of Am., No. 08-6197, 2009 WL 2959801, at *4 (D.N.J. Sept. 15, 2009).

Here, there is a distinction between New Jersey and Indiana's survival and wrongful death laws.

Indiana's survival statute provides that "if an individual who has a personal injury claim or cause of action dies, the claim or cause of action does not survive—unless the individual dies from causes other than those personal injuries." Technisand, Inc. v. Melton, 898 N.E.2d 303, 305 (Ind. 2008) (citing I.C. § 34-9-3-1(a)(6) and holding that because claim was that decedent died from personal injuries allegedly caused by one of the defendants, once decedent died, claim brought by husband was one for wrongful death and thus subject to the two-year statute of limitations governing wrongful death claims regardless of the underlying tort). Accordingly, where an individual dies from causes stemming from his or her personal injuries, that personal injury claim or cause of action must be brought as a wrongful death claim. See Am. Int'l Adjustment Co. v. Galvin, 86 F.3d 1455, 1457-58 (7th Cir. 1996). As the Seventh Circuit noted in Galvin,

> [this] [ ] distinction is important because each statue allows for different recoveries. In a case governed by the survival statute, [a decedent's] [ ] estate could receive full damages including pain and suffering. Under the wrongful death statute, the estate could recover only the [decedent's] [ ] medical and funeral expenses plus any other pecuniary or other loss suffered by her survivors.

Id.; see also Newkirk v. Bethlehem Woods Nursing & Rehab. Ctr., LLC, 898 N.E.2d 299, 300-301 (Ind. 2008) (summarizing precedent dealing with a wrongful death claim based on medical malpractice and stating that "[i]f the death was caused by the malpractice, (a) the malpractice claim (whether brought by the patient or another as the representative of the patient) terminates

at the patient's death . . . and (b) a wrongful death claim must be filed within two years of the occurrence of the malpractice").

Comparatively, in New Jersey, wrongful-death actions and survival actions can be brought simultaneously, regardless of the cause of death. The Supreme Court of New Jersey has observed that both statutory schemes serve different purposes and are designed to provide a remedy to different parties. See Smith v. Whitaker, 734 A.2d 243 (N.J. 1999). The Wrongful Death Act is meant to "compensate survivors for the pecuniary losses they suffer because of the tortious conduct of others," i.e., it is a "derivative action arising in favor of beneficiaries named under [the] act." Smith, 734 A.2d at 248-49 (quoting Alexander v. Whitman, 114 F.3d 1392, 1398 (3d Cir. 1997). The Survival Act "preserves to the decedent's estate any personal cause of action that decedent would have had if he or she had survived." Id. (citing N.J. Stat. Ann. § 2A:15-3). "Thus, the Wrongful Death Act benefits the heirs of the decedent, while the Surviv[al] Act provides a remedy to a decedent's executor or administrator." Galante v. May, 835 A.2d 352, 355 (N.J. Super. Ct. App. Div. 2003).

Due to this difference, the Court finds that there is a conflict between the New Jersey and Indiana's laws such that the Court must now determine which state has the most significant relationship to this action based on the principles set forth in the Restatement (Second) Conflict of Laws. See Gray, 2011 WL 2975768, at *2.

Actions for personal injury are analyzed under Restatement (Second) Conflict of Laws § 146, which provides:

> [i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

6

Id. The Supreme Court of New Jersey has summarized the principles embodied in section 6 as "'(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states.'" Camp Jaycee, 962 A.2d at 463 (quoting Erny v. Estate of Merola, 792 A.2d 1208, 1217 (N.J. 2002)).

Defendants argue that Indiana, rather than New Jersey, has the most significant relationship to the claims alleged in this action because Mother Plaintiff is a citizen and resident of the State of Indiana, and Sophia, the decedent, was born and died in Indiana. Defendants further contend that Mother Plaintiff alleges "that she ingested Lexapro during her pregnancy under a doctor's prescription, and there is no indication in the Complaint that she was living outside of Indiana during her pregnancy or that the prescribing doctor was anywhere other than Indiana," and finally, Mother Plaintiff "does not allege that she has ever had any contact whatsoever with any defendant . . . indeed, [Mother] Plaintiff alleges that only one of the three defendants, Forest Research Institute, Inc., is a new Jersey Corporation with its principal place of business in New Jersey." (Defs.' Br. 5-6.)

Plaintiffs respond that "New Jersey's interest in a product liability case against a domestic defendant is more significant when a statute of limitations is the basis of the conflict, even where a plaintiff's injury occurs in another state." (Pls.' Opp'n Br. 15.)

The Court finds that Defendants have the better of the argument.

Here, not only did Plaintiffs' injuries occur in Indiana, but "the conduct causing injury in a prescription drug products liability case, including failure to warn and warranty cases, occurs primarily where the injured party was prescribed and ingested the drug." Yocham v. Novartis

Pharm. Corp., 736 F. Supp. 2d 875, 882 (D.N.J. 2010) (citing Cornett v. Johnson & Johnson, 998 A.2d 543, 551-52 (N.J. Super. Ct. App. Div. 2010)).

Further, Mother Plaintiff alleges that she and her health professionals and physicians received or failed to receive certain representations, warranties, and warnings, but she does not allege that these misrepresentations, warranties, and warnings were received anywhere other than Indiana. Mother Plaintiff also alleges that she ingested the drug that allegedly caused her injury, but again does not allege that this occurred anywhere other than Indiana. Additionally, Mother Plaintiff alleges that she and the decedent received medical care stemming from Mother Plaintiff's ingestion of Lexapro or Celexa, but she does not allege that this treatment occurred anywhere other than Indiana. Finally, Plaintiffs allege that the decedent was born in Indiana and subsequently died in Indiana.

Although there may have been some relevant conduct that occurred in New Jersey— indeed, Forest Research Institute, Inc. is based there—Plaintiffs fail to identify any activity that is particular to that state. As discussed above, Plaintiffs plead with generality throughout their Complaint referring to Defendants collectively as "Forest," rather than identifying conduct specific to each Defendant. Based on the foregoing, the parties' relationship is centered in Indiana and Indiana has the stronger interest in having its law applied to this litigation. See Restatement (Second) of Conflict of Laws § 146 cmt. e ("The local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there."); Rowe v. Hoffman-La Roche, Inc., 917 A.2d 767, 776 (N.J. 2007) (applying New Jersey's older governmental interest test to determine which states' law would apply, and reasoning "[t]o allow a life-long Michigan resident who received an FDA-approved drug in

8

Michigan and alleges injuries sustained in Michigan to by-pass his own state's law and obtain compensation for his injuries in this State's courts completely undercuts Michigan's interests, while overvaluing our true interest in this litigation.").

### B. The Application of Indiana's Law to Plaintiffs' Claims

Based on the Court's conclusion that Indiana law will apply to Plaintiffs' wrongful death and survival claims, Plaintiffs' survival claims are precluded by Indiana's Wrongful Death Act since Sophia's death was caused by her personal injuries. Accordingly, the Court's next inquiry is whether, as Defendants argue, Plaintiffs' wrongful death claims are time-barred because Plaintiffs failed to comply with Indiana's commencement rules. See Ind. R. Trial P. 3.

The Supreme Court has held that the Federal Rules of Civil Procedure will not conflict with state statutes of limitations that condition "commencement" of an action on the fulfillment of certain state-imposed requirements, e.g., service to be made on a defendant. See Walker v. Armco Steel Corp., 446 U.S. 740, 752-53 (1980). Courts of Appeals have followed this directive and held that the timeliness of a diversity action is governed by state law, which includes state statute of limitations and tolling and savings provisions. See Conover v. Lein, 87 F.3d 905, 907 (7th Cir. 1996); Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995), reh'g denied, 52 F.3d 764 (applying state rules to commencement of diversity action that included federal and state claims); McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 660 (3d Cir. 1980) (applying Pennsylvania borrowing statute to cause of action arising in Ohio and stating that the court must look to Ohio law to determine when Ohio's statute of limitations began to run); see also Gibson v. Slone, No. 10-145, 2011 WL 2009815, at *1 (E.D. Ky. May 23, 2011) (citing Powell v. Jacor Commns. Corp., 320 F.3d 599, 602 (6th Cir. 2003)) ("When a federal court hears a state-law

9

claim, it not only applies the relevant state statute of limitations; it must also apply state law to determine when an action "commences" and the limitations clock stops ticking.").

Looking to Indiana's statute of limitations and commencement rules, Indiana Trial Rule 3 provides:

> [a] civil action is commenced by filing with the court a complaint or such equivalent pleading or document as may be specified by statute, by payment of the prescribed filing fee or filing an order waiving the filing fee, and, where service of process is required, by furnishing to the clerk as many copies of the complaint and summons as are necessary.

Hortenberry v. Palmer, 992 N.E.2d 921, 923-24 (Ind. Ct. App. 2013) (citing Ind. R. Trial P. 3). Indiana courts applying—and federal courts interpreting—this rule have held that each requirement of Rule 3 must be met within the applicable limitations period or else the action will not commence, the limitations clock will not stop ticking, and the resulting civil action will be time barred. See Ray-Hayes v. Heinamann, 760 N.E.2d 172, 173-74 (Ind. 2002) (holding firmly that the summons must be tendered within the statute of limitations for commencement of an action), rev'd on other grounds, 768 N.E.2d 899 (holding that previous opinion applied only prospectively).

Indiana provides that a wrongful death lawsuit must be commenced within two years of the decedent's death. See Ind. Code. Ann. § 34-23-1-1. Because this right is purely statutory, "the two-year time period within which an action must be commenced is a condition attached to the right to sue . . . [and] [t]he wrongful death action accrues when the injured person dies." Holmes v. ACandS, Inc., 709 N.E.2d 36, 39 (Ind. Ct. App. 1999).

Here, Sophia died on August 7, 2011. Court records indicate that Mother Plaintiff filed suit in this Court on August 2, 2013, within two years of Sophia's death. However, Mother Plaintiff failed to comply with Indiana Trial Rules 3 and 4 such that her suit was "commenced" in this Court before August 7, 2013, when the two-year wrongful death statute period allegedly

expired. To illustrate, Mother Plaintiff attached one summons to the Complaint, (see Pl.'s Opp'n Br. Ex. A, Doc. No. 4119-2), however, this summons was largely blank. Indiana Trial Rule 4 sets forth the formal requirements for a summons as follows:

> (C) Form of summons. The summons shall contain: (1) The name and address of the person on whom the service is to be effected; (2) The name, street address, and telephone number of the court and the cause number assigned to the case; (3) The title of the case as shown by the complaint, but, if there are multiple parties, the title may be shortened to include only the first named plaintiff and defendant with an appropriate indication that there are additional parties; (4) The name, address, and telephone number of the attorney for the person seeking service; (5) The time within which these rules require the person being served to respond, and a clear statement that in case of his failure to do so, judgment by default may be rendered against him for the relief demanded in the complaint. The summons may also contain any additional information which will facilitate proper service.

Ind. R. Trial P. 4(C). Though the summons names Forest Research Institute, Inc. as a defendant, it does not include any of the information required by Rule 4(C).[2] Further, Plaintiffs did not include summonses for Forest Laboratories, Inc. or Forest Pharmaceuticals, Inc.

Ordinarily, because Sophia died on August 7, 2011, any wrongful death action stemming from her death would commence on that date, and thus the two-year condition precedent to the right to sue would expire on August 7, 2013. Because Plaintiffs did not tender any proper summonses to the Court prior to that date, their wrongful death claims would typically be untimely. See Dennis v. Donahoe, No. 12-48, 2012 WL 1577445, at *3 (N.D. Ind. May 4, 2012) (stating that on the date plaintiff filed her complaint, court records showed that she tendered summonses only for the Postmaster General, but did not include the necessary summonses for

---

[2] Although Plaintiffs argue that the Clerk of Court issued a summons one day before the alleged expiration of the two-year limitations period, and thus this action was commenced within two years of August 7, 2011, Indiana courts have held that this does not control for purposes of determining whether an action is timely commenced. See Johnson v. Morgan, 871 N.E.2d 1050, 1054 (Ind. Ct. App. 2007) (stating that the "issuance of summons is beyond the plaintiff's control as it must be completed by the clerk"); Fort Wayne Int'l Airport v. Wilburn, 723 N.E.2d 967, 968-69 (Ind. Ct. App. 2000) (stating that "[i]n the case before us, we are not concerned with the failure of the Clerk to issue a summons after its proper tender by the plaintiff. Here, the plaintiff failed to carry out one of the three requisites over which she had total control").

the United States Attorney or the Attorney General pursuant to Fed. R. Civ. P. 4(i) and 39 U.S.C. § 409; accordingly, because plaintiff's Title VII action was never considered "commenced" in Indiana state court, and could never be considered "commenced" after the time to file expired, her case would have been dismissed by the state court); Fort Wayne, 723 N.E.2d at 968 (granting defendants' motion to dismiss where plaintiff filed her complaint and paid the filing fee prior to the expiration of the applicable statute of limitations, but failed to tender the necessary summonses to the clerk until after the two-year statute of limitations expired).

There is a wrinkle in this case, however, that neither party raised.  Plaintiffs allege that Defendants fraudulently concealed the true risks associated with Lexapro and Celexa and that Plaintiffs were prevented from discovering information about the safety of these drugs sooner due to Defendants' fraudulent concealment of the facts and information that would have allowed Plaintiffs to timely discover potential causes of action.  (See Compl. ¶¶ 32, 34-35, 38, 86, 88.)

In a decision handed down by the Supreme Court of Indiana approximately two weeks ago, the Supreme Court held that the Indiana "Fraudulent Concealment Statute may apply to toll the Wrongful Death Act's two-year filing period."  Alldredge v. Good Samaritan Home, Inc., No. 82S01-1305-CT-363, 2014 WL 2504551, at *7 n.4 (Ind. June 3, 2014).  Further, because "a plaintiff is entitled to an entire statutory period after discovery to file his claim, which in the wrongful death context means two years," it is not at all clear here that Plaintiffs' claims are untimely.  Id.

On a motion to dismiss on statute of limitations grounds, where the plaintiff has set forth sufficient allegations that plausibly give rise to an entitlement for relief and it is not apparent on the face of the complaint that his or her claims are untimely, the Court must deny the motion. Indeed, as it is unclear exactly when Plaintiffs discovered their claims, the Court cannot conclude

that the limitations period governing Plaintiffs' wrongful death claims expired on the two-year anniversary of Sophia's death.

Accordingly, the Court holds that based on the face of the Complaint, Plaintiffs' wrongful death claims are not barred by the two-year period governing wrongful death suits under Indiana's Wrongful Death Act. Further, as discussed in note 1 supra, because Defendants failed to challenge the timeliness of Mother Plaintiff's personal injury claims, the Court will not reach that particular issue and will deny Defendants' motion in its entirety.

## IV. CONCLUSION

For the foregoing reasons Defendants' Motion is **DENIED**. An appropriate order will issue today.

Dated: 6/18/2014

s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge